## Howard G. Dindo v. Kenneth N. Denton, Dorden Corporation

[287 A.2d 546]

No. 146-70

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed January 11, 1972

*Gelsie Monti*, Barre, for Plaintiff.

*McKee, Clewley & FitzPatrick*, Montpelier, for Defendants.

**Shangraw, J.** The plaintiff, a real estate broker, brought this action in Washington County Court to recover a commission relating to the sales of two pieces of property, one to Wizard, Inc., and the other to Marcel H. Rouleau and Marylyn G. Rouleau.

The plaintiff's complaint is in common counts. By way of specifications, he claimed the following:

"To 5% commission due on sale of land for the Defendants in Berlin, Vermont, as follows:

| | |
|---|---|
| 5% of sale price of $225,000.00 for land sold to Wizard, Inc. | $11,250.00 |
| 5% commission for finding customer, Marcel Rouleau, ready, able, and willing to purchase land in Berlin of Dorden Corporation | 1,875.00" |

Each of the defendants denied liability and filed a joint answer setting forth:

"1. Defendants Kenneth Denton and Dorden Corporation deny that the Plaintiff is entitled to any percentage of the sale price to Wizard, Inc., either as a principal or as co-broker since the Plaintiff was not the procuring cause nor did he make any contribution toward the sale of land to Wizard, Inc.

2. Defendants Kenneth Denton and Dorden Corporation both deny that the Plaintiff is entitled to any commission due on account of the Marcel Rouleau transaction since Rouleau is not ready, willing and able to purchase the property and in fact through his Attorney Jose Monte on August 16, 1969, notified the Defendants Kenneth Denton and Dorden Corporation that he desired to disaffirm any agreement to purchase and demanded return of his down-payment."

Trial was by jury on September 22 and 24, 1970, resulting in a verdict against the defendants of $13,125.00 "Plus interest Due". On October 23, 1970, a Judgment Order was entered for the Plaintiff to recover of the defendants the sum of $13,125.00, with interest to October 22, 1970, in the sum of $787.50, plus costs of $66.00, amounting in the whole to $13,978.50.

The defendants moved for a directed verdict at the close of the evidence which was denied. They then also moved that the court strike from the plaintiff's specifications his claim of $11,250.00 representing 5% of the sale price of $225,000.00 for land sold to Wizard, Inc. This motion was also denied. Following the charge all parties took certain exceptions thereto.

On October 1, 1970, the defendants filed a motion seeking the following relief: (I) That judgment be entered for the defendants notwithstanding the verdict of the jury; (II) that the verdict be set aside; (III) that the court order a *remittitur* or amend and alter the judgment; (IV) that a new trial be ordered; and (V) that judgment be entered in favor of the defendant, Kenneth N. Denton. All phases of this motion were overruled by the trial court. On October 27, 1970, the defendants filed a notice of appeal from the judgment order of October 23, 1970, and from the denial of the foregoing motion.

The defendant, Dorden Corporation, is a Massachusetts corporation having its office in South Hadley, Massachusetts. The defendant, Kenneth N. Denton, since the inception of Dorden Corporation, was a stockholder and owned 97% of its corporate stock. Mr. Denton's wife and son owned the remaining 3% of the stock of this corporation. At all times material defendant Denton was the president, treasurer, and chief executive officer or manager of the corporation.

Through the efforts of Denton, the Dorden Corporation acquired ninety-one acres of land in the Town of Berlin, Vermont, known as the "Comstock" land. Charles E. Rockwell conveyed this land to Dorden Corporation by warranty deed dated April 21, 1969, which we shall hereinafter refer to as the "Rockwell" premises. In order to have access to the Rockwell property Denton acquired an additional two acres, known as the "Blow" land which was conveyed by Chester T. Blow and Ella C. Blow to Dorden Corporation on April 28, 1969. The total area thus acquired by the corporation was ninety-three acres of land.

Previous to the above conveyances, on February 25, 1969, a written agreement was entered into between Dorden Corporation and Kenneth N. Denton wherein it was recited that the corporation had in its possession duly executed agreements whereby it proposed to purchase certain property in the Town of Berlin.

The agreement of February 25, 1969, recited that Dorden Corporation was desirous of employing the services of Kenneth N. Denton to act as its broker in disposing of the property in Berlin, Vermont, and by its terms contained the following:

"1. The Corporation gives to the Broker the EXCLUSIVE RIGHT TO SELL until the 31st day of May 1969 at midnight, under the terms and conditions hereinafter described, the parcels of land it has under agreement as hereinbefore referred to and briefly described as follows:"

The agreement continued by describing the Rockwell land as containing 91 acres, more or less, and the Blow land as containing 2.15 acres, more or less.

The Dorden-Denton broker agreement further contained the following provisions:

"2. The Corporation agrees to pay to the Broker, for his services, a commission of Ten Percent (10%) of the selling price of any parcel in accordance with the following Plan of Sales which is not fixed but serves as a guide:"

Continuing, the agreement stated that of the 93 acres, seven acres were reserved for roads, and the remainder of the acreage was zoned or broken down into four parcels, with a sale price on each parcel. The commission to be received by Denton on each parcel represented 10% of the sale price. The total sale price was $309,500.00, with commission therein stated at $30,950.00.

The Dorden-Denton agreement also stated:

"3. In consideration of the Corporation giving to the Broker the EXCLUSIVE right to represent it, the Broker agrees to do the following:

(a) Advertise and otherwise pursue the sale of the property described herein;

(b) Negotiate with and for the Corporation in connection with any prospects secured by whatever means;

(c) Cooperate with any qualified real estate broker on a basis of custom in the profession and, in advertising, invite broker participation.

(d) Accept the commission of Ten Percent (10%) as total compensation for all services."

Under date of March 31, 1969, the defendant, Denton, wrote plaintiff a letter concerning the sale of the Rockwell and

Blow parcels of land. A plan of the 93 acres was enclosed wherein the acreage was broken down into four different colored zones, together with an allowance for roads. Each zone carried with it a separate sale price. The total sale price of the four zones, ranging from 15 acres to 26 acres, was $309,500.00. On the basis of these prices, Denton stated in the letter that plaintiff would receive a 10% commission. In the letter, plaintiff was authorized to sell the zoned areas in any combination, except as to the 15 acres zoned in red and priced at $82,500.00. He was, however, authorized to sell this 15 acre plot if kept intact. The letter continued by stating, "If your party were (sic) willing to take the whole tract, we could accept a price of $260,000.00 and still pay the commission." This letter was written on stationery containing the following letter head: "Kenneth N. Denton, Development Consultant, South Hadley, Massachusetts 01075."

Under date of April 8, 1969, Dorden Corporation and Marcel H. and Marylyn G. Rouleau entered into a written agreement whereby the corporation contracted to sell and convey to Mr. and Mrs. Rouleau 12.5 acres, more or less, of the Rockwell property for the agreed purchase price of $37,500.00. The purchasers made a down payment of $3,750.00, receipt of which was acknowledged in the agreement.

By a deed of warranty dated May 22, 1969, Dorden Corporation conveyed to Wizard, Inc., a Vermont Corporation, with its office at Burlington, Vermont, the Rockwell and Blow land for the sum of $225,000.00.

Previous to the above Dorden-Wizard conveyance, Wizard, Inc., by written agreement dated April 14, 1969, gave Denton the exclusive right and authority to sell the Rockwell-Blow properties for $309,500.00, and therein agreed to pay a commission of 10% ". . . covering such transactions by you or any person acting for you . . . ." Following this authorization, on June 20, 1969, Denton wrote plaintiff, Dindo, enclosing a copy of the Wizard, Inc., agreement, and in the letter authorized Dindo to act as a co-broker in the sale of the property. The letter also stated, "Any sales which are made through your office, upon approval by Wizard, Inc., will result in a 5% commission to you."

Then followed a letter from Denton to the plaintiff dated September 18, 1969, which, in part, referred to the property in Berlin, Vermont, near the hospital, formerly owned by Dorden Corporation and now by Wizard, Inc. By this letter, plaintiff's authority to sell this property was revoked ". . . with the exception of the pending transaction with Marcel Rouleau, et al. . . . ."

Later, on August 31, 1970, Wizard, Inc., conveyed to Marcel H. and Marylyn G. Rouleau twelve and one-half acres of the Rockwell acreage which they had bargained for with Dorden Corporation on April 8, 1969.

Marcel H. Rouleau became interested in the property which was shown to him by the plaintiff. As a result of plaintiff's efforts, Mr. and Mrs. Rouleau entered into a written agreement on April 8, 1969, to purchase 12.5 acres, more or less, of the Rockwell property for the agreed purchase price of $37,500.00.

Plaintiff had met Denton on several occasions and had given him the names of persons who might be interested in purchasing the corporation's property.

Leading up to the Dorden-Rouleau transaction, the plaintiff had contacted Denton a number of times. Denton came to Barre, Vermont, and prepared the above purchase and sales agreement. It was then executed by Mr. and Mrs. Rouleau and by Denton acting on behalf of the Dorden Corporation. The purchasers made a down payment of $3,750.00 to the plaintiff, which was later sent by him to the corporation.

Payment of the balance of the purchase price and a transfer of title to the 12.5 acres was to be made on July 15, 1969, unless a delay occurred "beyond the control of the seller". No question arises but what the plaintiff was the procuring cause of the agreement and had found a customer ready, willing, and able to purchase the property on the terms agreed upon.

The purchase and sales agreement contained a description of the land proposed to be conveyed and made reference to a right-of-way. The agreement also contained the following:

"A more exact description of said premises for use in the deed conveyance and/or conveyances may be secured

from the verification or survey by a Registered Surveyor to be provided by Seller."

Subsequently, a controversy arose between the seller and purchasers relating to the description of the property to be conveyed. The Rouleaus claimed that the description in the deed to be given to them differed from the original undertaking, and also as to certain road or roads and rights-of-way. They then declined to follow through on the agreement. As a result their differences were ironed out, and the property was ultimately conveyed to the Rouleaus by Wizard, Inc., on August 31, 1970.

Plaintiff was authorized by Denton to act as his co-broker, and initially was to receive a commission of 10% on sales made by him. Plaintiff claims that it was subsequently agreed that the commission of 10% would be split down the middle between plaintiff and Denton.

Defendants first challenge plaintiff's right to recover the 5% commission on the Rouleau transaction by claiming that a deed never passed from Dorden Corporation to Mr. and Mrs. Rouleau and that the deal "fell through".

It is also claimed by the defendants that plaintiff waived his right to his commission on the Rouleau transaction until such time as a deed was given by Dorden Corporation. There is no evidence to support this conclusion.

In essence, it is claimed by the defendants that Wizard, Inc., made a new deal with the Rouleaus concerning the construction of a roadway which was never a part of the original undertaking, and that the Dorden Corporation-Rouleau agreement was never consummated.

The defendants concede that the plaintiff did introduce the Rouleaus to the property and, at the time the contract was signed, did successfully secure these people ready, willing, and able to buy the property under the terms and conditions set forth in the contract. Plaintiff made repeated demands of Denton for his commission on the Rouleau sale without favorable results.

The court charged that the jury could find plaintiff was entitled to a commission if he procured someone ready, willing, and able to purchase the property, unless the agreement be-

tween Denton and the Rouleaus contained some conditions, and if so, Dindo would not be entitled to a commission until such time as those conditions had been met. To this the defendants assign error. The consummation of the Dorden Corporation-Rouleau contract was not dependent upon any conditions, other than a possible delay of final performance of the agreement for reasons beyond the control of the seller.

To entitle a real estate broker to a commission for the sale of property, it is necessary for him to produce a person ready, willing, and able to purchase it at the price and upon the terms prescribed by the owner. *Benoit* v. *Wing*, 117 Vt. 477, 478, 94 A.2d 237 (1953). He must have been the procuring cause of the sale. *Dindo* v. *Cappelletti*, 116 Vt. 403, 405, 77 A.2d 840 (1951).

Whatever adjustments may have been made by Dorden Corporation or Wizard, Inc., concerning the initial agreement with the Rouleaus cannot serve as an escape hatch to avoid payment of a commission to the plaintiff. The record clearly demonstrates that plaintiff was the procuring cause of the Rouleau sale.

Defendants urge that plaintiff's recovery of a commission of 5% on the sale of property by Dorden Corporation to Wizard, Inc., for $225,000.00 is not supported by the evidence.

Shortly after April 30, 1969, plaintiff testified that he had a discussion with Denton while parked on the Barre-Montpelier road. Plaintiff's testimony reveals the following on direct examination:

"Q. All right. Will you tell us what the conversation was that you had with Mr. Denton at that place?

Mr. McKee: We will object on the same ground. There is no evidence of any completed transaction.

COURT: We will take the answer.

Mr. Monti: Go ahead, Mr. Dindo, What conversation did you have?

A. We had a conversation about commission. Mr. Denton told me, he says, 'We'll take and we'll split everything down the line fifty-fifty, whether you do it, or I do it.' In other words, if I make the sale, or he makes the sale, we all share on a fifty per cent basis.

Q. Share what?

A. The commission.

Q. On what land?

A. Any property that we had.

Q. What property, roughly, did you and he have at that time?

A. Numerous.

Q. Well, identify some of them?

A. South Barre interchange, Ciampi's lot, Wobby, Rockwell, and some land I had been checking on up in Jeffersonville and Stowe."

Mr. Dindo testified that he knew nothing about the sale by Dorden Corporation to Wizard, Inc., until he read about the transaction in a newspaper. He was not the procuring cause of this sale. Dindo also testified, "I had previously been told by Mr. Denton that this land was going to be shifted to another corporation, and it was for tax purposes, and so forth." Defendant Denton testified that no commission was generated on this sale.

The conveyance by Dorden Corporation to Wizard, Inc., was by deed dated May 22, 1969. Not until September 18, 1969, did Denton revoke plaintiff's authority to act as co-broker in the sale of the Berlin property, except as to the pending transaction with Rouleau. It is also to be noted that, insofar as appears of record, Denton's authorization by Dorden Corporation dated February 25, 1969, to act as its broker in disposing of the Rockwell-Blow properties was not revoked.

Under his co-broker contract, plaintiff was to receive a commission of 10% on sales made by him. By reason of his testimony to the effect that Denton agreed to divide 10% fifty-fifty on the sales of all property, whether sold by Denton or the plaintiff, Dindo agreed to accept a 5% commission on the Rouleau transaction.

While on the witness stand the following question was asked Denton concerning the Rouleau transaction:

"Q. Now, did you at any time orally tell Mr. Dindo that he was entitled to $1,875 of that sale? Yes, or no?

A. General conditionally, yes."

When further inquired of, Denton testified that there was no agreement concerning the splitting of commission of $3,750.00 on the Rouleau sale and Mr. Dindo being paid a commission on the sale of the remainder of the property. However, when later inquired of concerning the splitting of the commission on the Rouleau sale, and on all the property of Dorden Corporation, Mr. Denton replied, "Well, I'm sorry, I can't answer that for yes or no. Anything that I have is in writing." No writing on this subject was produced in evidence by the defendants.

In its charge the court properly submitted to the jury for resolution the issue as to whether there was an agreement between Denton and the plaintiff to split the 10% commission on the Rouleau sale and on all the remaining property of Dorden Corporation, whether sold by the plaintiff or Dorden.

The uncontroverted evidence is that Dorden Corporation sold to Wizard, Inc., for the sum of $225,000.00, the entire parcel of 93 acres, of which 12.5 acres were under contract of sale to Mr. and Mrs. Rouleau. It must be assumed that this sale was advantageous to the seller. To what extent a tax benefit was gained, as claimed by Denton, does not appear. To say the least, a sale was made. This transaction was not excepted, or reserved, in the broker's authorization from Dorden Corporation to Denton, nor from Denton to the plaintiff.

■ The court in its charge referred to the Dorden Corporation-Wizard, Inc., sale and plaintiff's claim of a commission of 5%. In order to recover the court charged: "Well, you have got to be satisfied, first, that there was a commission on the sale; you have got to be satisfied that the agreement that Dindo says was between him and Mr. Denton is in fact the agreement." Defendants categorically claim error on the part of the court by urging that there was no evidence to support such commission. Defendants' claim of error is not well founded. The evidence justified the trial court's submission of this issue for the jury's resolution.

■ Defendants also urge error in the court's charge by failing to point out to the jury that a broker, by his conduct expressed or implied, can waive a commission until such time as a deed passes, or that a broker can modify an original agreement made with respect to his commission. There is no

evidence that plaintiff's right to claim his commission was contingent upon the passing of deeds. As to plaintiff's claim that the initial 10% commission agreement was modified to 5%, this issue was submitted to the jury for its consideration. Defendants cannot prevail on the foregoing assignment of error.

The defendants further urge in their brief that nowhere in the court's charge were instructions given to the jury that it could find only one defendant liable to the plaintiff. At all times during the charge, the court referred to the parties defending in this action as the "defendants". At no point did the court state that if one defendant was found liable that both were liable.

■ The weakness in the defendants' above assignment of error is that, following the charge, no exception was taken to the failure of the court to have charged differently as to the liability of the defendants. The issue in question was not made, or urged, below. Since, as here, this question was made in this Court for the first time, it is not appropriate to raise the question here. *Anderson* v. *Knapp*, 126 Vt. 129, 139, 225 A.2d 72 (1966). A question cannot be brought to this Court upon which it is made to appear that the trial court had no fair opportunity to pass judgment. *Kinney* v. *Cloutier*, 125 Vt. 109, 112, 211 A.2d 246 (1965). Defendants cannot prevail on this assignment of error.

■ In passing on the defendants' motion for a directed verdict, the evidence must be viewed in the light most favorable to the plaintiff, and the effect of modifying evidence is to be excluded. *Hedman* v. *Siegriest*, 127 Vt. 291, 293, 248 A.2d 685 (1968) ; *Eastman* v. *Williams*, 124 Vt. 445, 449, 207 A.2d 146 (1965). All conflicts are resolved against the defendant, and contradictions and contrary inferences are for the jury to resolve. *Berry* v. *Whitney*, 125 Vt. 383, 384, 385, 217 A.2d 41 (1966). A motion for judgment notwithstanding the verdict is tantamount to a motion for a directed verdict and is passed upon in the same way. *Campbell* v. *Beede*, 124 Vt. 434, 435, 207 A.2d 236 (1965). Such a motion cannot be granted if there is any evidence fairly and reasonably tending to justify

110

the verdict. *Smith* v. *Blow & Cote, Inc.*, 124 Vt. 64, 66, 196 A.2d 489 (1963).

██ Defendants' motion to set aside the verdict or, in the alternative, to order a *remittitur* was addressed to the discretion of the trial court. *Banker* v. *Dodge & Hemmings*, 126 Vt. 534, 537, 237 A.2d 121 (1967). Since this point is not advanced by the defendants in their brief, it is not subject to review. *Healy* v. *Moore*, 108 Vt. 324, 348, 187 A. 679 (1936).

During the charge, the court, in substance, stated that in the event the jury found that there was no agreement between the plaintiff and Denton to reduce plaintiff's commission on the Rouleau sale from 10% to 5% of the sale price, then plaintiff would be entitled to recover the 10%, namely, $3,750.00. On the contrary, if they found that there was an agreement to split the 10% commission 50-50, then plaintiff's recovery on this sale could be limited to $1,875.00. This instruction was proper. Furthermore, defendants have no cause for complaint in that the jury, by a special verdict, limited plaintiff's recovery on this sale to $1,875.00. No error appears.

The several motions presented by the defendant were properly denied by the court below. The briefed exceptions to the charge are of no avail to the defendants. The verdict is supported by the evidence and the judgment thereon should not be disturbed.

*Judgment affirmed.*

### Supplemental Opinion

Since the entry of affirmed was made in the foregoing case, it has been called to our attention that the Wizard Corporation, Inc., was served as trustee, and that said trustee's liability, if any, had not been determined by the court below.

For this reason the final entry in the opinion is amended to read:

*Judgment affirmed and cause remanded for a determination of the liability, if any, of the trustee, Wizard Corporation, Inc.*