*Affirmed.*

**In re J.A.P.**

**D.P., Appellant.**

**No. 98–FS–1727.**

District of Columbia Court of Appeals.

Argued March 14, 2000.
Decided March 31, 2000.

---

Craig Goldblatt, with whom James R. Marsh, P.J. Mode, Christopher J. Herrling, and Jennifer E. Grishkin, Washington, DC, were on the brief, for appellant.

Mary T. Connelly, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for the District of Columbia.

Karen A. Howze, Washington, DC, filed a statement in lieu of brief for the adoption petitioners.

Before STEADMAN, FARRELL, and GLICKMAN, Associate Judges.

FARRELL, Associate Judge:

A motions division of the court granted an application for allowance of this interlocutory appeal by the birth mother in a contested adoption proceeding. The appeal, brought under D.C.Code § 11–721(d) (1995),[1] challenges the Superior Court judge's order refusing to appoint counsel and provide expert witness services for the indigent mother at public expense, and presents chiefly the issue of whether principles of equal protection would be violated by failure to apply the right-to-counsel provision governing neglect and termination of parental rights proceedings (D.C.Code § 16–2304(b)(1) (1997)) to this adoption proceeding initiated by a private party, in which adoption is sought over the objection of the natural mother. *See* D.C.Code § 16–304(e).

As required by § 11–721(d), the trial judge stated in writing his opinion that the ruling in dispute involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal therefrom may materially advance the ultimate termination of the litigation or case.[2] That

---

1. Section 11–721(d) provides:

    When a judge of the Superior Court of the District of Columbia in making in a civil case (other than a case in which a child, as defined in section 16–2301, is alleged to be delinquent, neglected, or in need of supervision) a ruling or order not otherwise appealable under this section, shall be of the opinion that the ruling or order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling or order may materially advance the ultimate termination of the litigation or case, the judge shall so state in writing in the ruling or order. The District of Columbia Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from that ruling or order, if application is made to it within ten days after the issuance or entry of the ruling or order. An application for an appeal under this subsection shall not stay proceedings in the Superior Court of the District of Columbia unless the judge of that court who made such ruling or order or the District of Columbia Court of Appeals or a judge thereof shall so order.

2. After so certifying, the judge stayed further proceedings in the case pending resolution of the appeal.

certification, however, "in no way limits [this court's] power to independently determine the suitability of § 11–721(d) to the litigation involved." *Plunkett v. Gill,* 287 A.2d 543, 545 (D.C.1972); *see W.R. Grace & Co. v. Galvagna,* 633 A.2d 25 (D.C.1993) (denying application for appeal under § 11–721(d)). Moreover, even when a motions division of this court has allowed the appeal to proceed, we are of the view that the division assigned to decide the merits is not bound by that order if, after briefing and further consideration, it concludes that the standards governing appeal under the statute are not satisfied. Analogously, the court has held that "when a motions division denies a motion to dismiss or various other pretrial motions, 'such denials shall be deemed to be without prejudice to reconsideration by a Merits Division,' unless expressly denied 'with prejudice.'" *Kleinbart v. United States,* 604 A.2d 861, 867 (D.C.1992) (quoting *District of Columbia v. Trustees of Amherst College,* 499 A.2d 918, 920 (D.C.1985)).[3] And federal appellate courts applying the parallel interlocutory appeal provision, 28 U.S.C. § 1292(b), retain the authority to determine after "full briefing and argument ... that the § 1292(b) certification may have been improvidently granted." *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.,* 964 F.2d 85, 88 (2nd Cir.1992). *See also Crow Tribe v. Montana,* 969 F.2d 848, 849 (9th Cir.1992) (dismissing appeal after concluding that "[p]ermission to appeal was improvidently granted"); *United States v. Bear Marine Servs.,* 696 F.2d 1117, 1119–20 (5th Cir.1983) (vacating, for same reason, order granting leave to appeal).

■ We hold that the grant of the application for leave to appeal in this case was improvident. The trial court judge did not explain how a decision by this court on the issue of appointment of counsel would ma-

terially advance the resolution of *this* case, nor could he. At the inception of the Superior Court proceedings, the judge asked The Children's Law Center to represent appellant *pro bono publico.* The Center generously accepted, and attorneys employed by it entered their appearances. These counsel then filed a motion "for court compensated expert witness and attorney's fees," accompanied by a draft order requesting "attorney's fees, *not to exceed $1.00,* at the rate of $50.00 per hour" (emphasis added). The trial judge denied the motion after oral argument, but saw it as presenting "a test case" on the constitutionality of denying counsel (and related services) to an indigent parent in standalone adoption proceedings. The judge rejected the argument of counsel for the adoptive parents that the issue was moot as to the birth mother since her attorneys were only nominally seeking counsel fees; the court was satisfied with appellant's standing to "raise the issue for future cases." In their application to this court for leave to appeal, appellant's counsel asserted, conclusorily, that "[w]ithout [appointed] counsel, the Mother will not be able to adequately defend herself," but neither then nor since have they implied that their agreement to represent appellant is contingent on receipt of attorney's fees, whether "$1.00" or some other amount. On the contrary, their main brief effectively concedes that the constitutional argument for entitlement to counsel will have no bearing on appellant's case. *See* Br. for App. at 9 ("[T]his Court need not reach [appellant's] *individual due process claim* because ... equal protection requires the appointment of counsel ... for *all* indigent birth parents facing termination of parental rights in contested adoptions where such provisions exist for similarly situated parents facing termination in the neglect system" (emphasis added)).[4]

---

3. The reason for that is "the summary nature of the [motions division's] disposition and the usual practice of deciding the motion without explanation." *Kleinbart,* 604 A.2d at 867.

4. That is to say, if the effect of the trial court's ruling were to deny appellant counsel in the contested adoption proceeding, she would have available to her an argument under *Las-*

It is thus obvious from the record that appellant's counsel, having accepted the *pro bono* representation, intend to continue representing her in the adoption proceeding regardless of the outcome of this appeal.

■ But, while that is something we applaud, it demonstrates that what the trial judge termed a "test" issue is strictly that: an issue of law that will have no effect—or certainly none identifiable at this pre-trial stage—on the conduct of this adoption proceeding, and whose resolution therefore cannot seriously be expected to "advance the ultimate termination of the litigation." The fact that, as briefing and oral argument have shown us, the equal protection issue is a complex one [5] affords even less reason to decide it unnecessarily, since § 11–721(d) " 'was [not i]ntended merely to provide [interlocutory] review of difficult rulings in hard cases.' " *Plunkett,* 287 A.2d at 545 (citations and footnote omitted).

Nor is our conclusion changed by the fact that appellant also requested the appointment of an expert witness at public expense. That request too was conclusory, stating simply that appellant "needs to retain the services of" a "nationally recognized expert," identified by name, "who will conduct an attachment study between her and [the child]." No proffer was made of why such a study is necessary on the facts of this case. Even in the context of government-initiated neglect and termination of parental rights proceedings, the trial court is not obliged to authorize payment for "investigative, expert, or other services" unless these "are necessary but are not available through existing court resources." D.C.Code § 16–2326.1(g)(2). The trial judge had before him a report by the court's Adoption Resources Branch evaluating the background history of all the parties to the proceeding. Without any proffer of facts suggesting the inadequacy of this investigation, the judge would have had no duty to fund an additional study by an expert even in termination of parental right proceedings. Moreover, in contrast to his blanket refusal to appoint counsel, the judge reserved what he considered to be his authority to appoint another expert at government expense should the evidence show it to be "necessary to avoid any serious appellate issue [of the correctness of] granting the decree of adoption." We express no view as to the availability of such services in a contested adoption proceeding; [6] the point is that, as this interlocutory appeal comes before us, no showing has been made that a decision on the constitutional issue will affect, much less materially advance, the ultimate disposition of this case.

■ We close by repeating what we stated in *Plunkett, supra,* which is that "if [interlocutory] appeals are to serve the purpose for which they were intended, they must be used only when the alternative would mean greater delay and expense than would be caused by the interlocutory review itself." 287 A.2d at 545. Since the trial judge certified this as "a test case," fully fifteen months have elapsed until submission of the appeal to this merits panel for decision,[7] leaving all proceedings in the trial court frozen as a result of the stay. See note 2, *supra.* Such delay is especially ill-advised in cases

---

siter v. *Department of Social Servs. of Durham County,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), that due process requires provision of counsel on the facts of her case. Her relinquishment of that argument is a recognition that she will be represented *pro bono.*

5.  *See, e.g., M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996).

6.  *But see Lassiter, supra* note 4; *cf. Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (due process requires State to assure access to competent psychiatrist for indigent defendant whose sanity will be a significant factor at trial).

7.  No motion to expedite appears to have been filed by either party; only in February 1999 did this court, *sua sponte,* expedite the appeal.

like this concerning the status—and the best interests—of a child. (Indeed, § 11–721(d) appears to recognize that fact by excluding from interlocutory appeal "a case in which a child ... is alleged to be delinquent, neglected, or in need of supervision.") We decline to contribute further to that delay. *See Bear Marine Servs.,* 696 F.2d at 1120 (fact that "considerable time of the court and counsel [has] been invested in considering [the] appeal ... is no reason for the court to dissipate further energies on [it] or to decide questions that may prove to be hypothetical"). Because permission to appeal was improvidently granted, we now dismiss the appeal. The clerk shall issue the mandate of the court immediately. *See* D.C.App. R. 41(a).

*So ordered.*