### John Shumway, vs. Joel Simons.

Presumptive rights, acquired by long use and enjoyment, are analagous to those arising under the statute of limitations; and the use and enjoyment must be adverse and uninterrupted for the period limited by the statute.

If, therefore, the enjoyment of such a right has been interrupted or suspended, though not by the act of the party whose private interest was affected, such right will not become perfected; especially if, during the seasons of interruption, the owner of the property affected, resumes the use and enjoyment of it.

The doctrine of presumptive rights, is applicable to cases for which the statute has not provided.

THIS cause came up upon exceptions taken before Mr. Justice HUTCHINSON, and the other Judges of the County Court, at the last April Term. The action was *trespass on the case,* for overflowing the plaintiff's land, and was tried upon the *general issue.* The title of the plaintiff to the land in question, and of the defendant to the sawmill, dam, and mill privileges, by which the alleged injury was occasioned, were admitted on trial. The dam of which the plaintiff complained, was erected across the outlet of a pond in *Wells,* adjoining the plaintiff's land, and the injury consisted in causing the waters to rise above their accustomed level, and flow back upon the surrounding lands. The defence rested upon a presumptive right to overflow the land, arising from a long use of that *easement.*

The defendant introduced evidence tending to show, that the first sawmill and dam were erected at this place, in 1774, and occupied till the owners were driven off by the enemy, in 1776 or 7.—That upon the establishment of peace, the mill and dam were repaired and occupied till 1792, when the waters were let off for the benefit of a mill below :—that within a year or two after this, *Elkanah Cobb,* erected another mill and dam, which raised the waters of the pond higher than at present :—that the flooding of the land being deemed injurious to health, this dam was pulled down by the inhabitants of *Wells* :—that it was afterwards rebuilt by *Cobb,* to its present height, and so remained until destroyed by fire, in 1797 or 8 :—that in 1805, *Wm. Potter* deriving title under *Cobb's* estate, erected another mill and dam, (the latter of equal height as the one last aforesaid) which was kept up and occupied constantly, as business required, until the defend-

Rutland, Jan. 1827.
*Shumway* vs. *Simons.*

ant purchased of *Potter*, in 1817, with an ex-
ception of only two or three years, when the
dam was kept up partially, between the months of May and Octo-
ber :—that ever since the defendant's purchase, he had used
and kept up the dam to its present height, and that, in 1820, he
erected a new dam of the same height as the one preceding.

To rebut this evidence, the plaintiff produced evidence tending to
prove, that under a certain act of the Legislature, passed in 1806, for
the purpose of lowering the waters of this pond for the preserva-
tion of health, the select men of *Wells*, had annually about the 1st
day of May, for several years, from 1807 to 1813, raised the
waste gates or pulled up a part of the dam to let off
the water. And that in this way, they had sometimes reduced
the pond to its natural level, by about the 1st of June ; but in ma-
ny instances the gates, after a few days, were again shut by occu-
piers of the mill, who continued business while the water lasted :
—that the plaintiff, and those under whom he claims, had cut
hay upon the land in question, at various times, for forty years ;
and about twenty-five years ago, had drawn timber upon it,
and fenced it to keep cattle from it ; and that it was mowed near-
ly every year, except 1816, when it was pastured, till 1818 ;
since which time, and especially after the defendant's present dam
was erected, the land had been constantly overflowed, so that all
use of it by the plaintiff, had been lost.

The defendant contended, and requested the court to charge
the jury, that if the defendant and those under whom he claimed,
had, for fifteen years kept up the dam to its present height, it was
evidence from which a grant or title to the easement should now
be presumed ; and that such presumption was not affected by the
occasional suspensions or interruptions in the exercise of the right,
as appearing in evidence, because they were not occasioned by
any prohibition or interference of the plaintiff, but by the act of
the select men, in preservation of health, or other sufficient causes
wholly disconnected with any private right of the plaintiff. The
court refused to charge as requested, and instructed the jury to the
following effect :—" That by analogy to the statute limitations, a
presumptive right or easement, like the one set up by the defend-
ant, might be acquired by the uninterrupted enjoyment of that

right fifteen years. But it must be an uninter- { Rutland; Jan. 1827.
rupted enjoyment ; for the acquisition of such } *Shumway* vs. *Simons.*
a right is founded in the presumption of a grant from the person
affected by the enjoyment of it. If the right has not been thus
enjoyed, it makes no difference whether the defendant was pre-
vented or interrupted in the enjoyment by the interference of
the selectmen, or of the plaintiff himself. If the right had been
previously acquired, the defendant would not be considered as a-
bandoning the right, by yielding to the interference of the select
men. But if in fact the pond had been so drawn off from year to
year, that the plaintiff had mowed and pastured his land, he could
not be presumed to have granted the right of keeping this land con-
stantly flooded. If the jury should find, that the defendant and
those under whom he claims have enjoyed the right without in-
terruption, for fifteen years before this action commenced, of flow-
ing this land to the same extent to which it has been flowed since
the defendant's last dam was erected, they should return a verdict
for the defendant. But if they found that the land was formerly
capable of being mowed and pastured, until the erection of the
defendant's present dam, and that since that erection it had remain-
ed so constantly covered with water as to be no longer capable
of such cultivation, their verdict should be for the plaintiff." The
jury having found for the plaintiff, the cause was passed to this
court for a hearing of legal questions arising in the trial.

*Langdon* and *Kellogg,* for the defendant, contended that the sus-
pension in the use of the mill and dam, occasioned by the revo-
lutionary war, did not effect the presumptive right now claimed
by the defendant, and that right became perfect in 1790. 2d.
That if they were mistaken in this, yet that the right became per-
fect in 1808, being fifteen years from the rebuilding of the works
after the war.—3. That dating from 1805, when *Potter* rebuilt,
the right was consummated several years before the commence-
ment of this action:—2 *Selw. N. P.* 1090—3 *East,* 300-2—1 *B.*
& *P.* 400.—2 *Con. R.* 590-2 and 610. It does not appear that
the plaintiff, or any other occupant of the land in question, ever
resisted or complained of the *easement.* The only interruptions
pretended are those occasioned by the select men, acting under a
statute enacted for the preservation of health, and not for the re-

lief of the plaintiff from any encroachment upon his land. The select men must have done the same, though the plaintiff had been owner of the mill and dam, as well as the land. But the act of strangers cannot enure to the benefit of the plaintiff, who has slept upon his rights more than fifteen years.—*Fonbl. Eq.* 319.—1 *Sw. Dig.* 119.—7 *Wheat.* 105-6-7.

*Clark*, for the plaintiff. A claim of the kind set up by the defendant is analagous to a right acquired under the statute of limitations, and therefore requires an uninterrupted possession or use of the privilege for fifteen years. It goes upon the ground that the person who sustains the injury by such an encroachment upon his land, would not lie by for any entire period of fifteen years, without resistance or bringing an action.

ROYCE, J. delivered the opinion of the court.—It seems to have been submitted to the jury in this case to find from the evidence, whether, for fifteen years before the commencement of the action, the plaintiff's land had been overflowed, by the means complained of in the declaration, to the same extent as for the period since the erection of the defendant's present dam; and also whether the overflowing of the land had been continued for any period of fifteen years without interruption. Their verdict must be taken to have settled both these questions in the negative. As an answer to the first part of this finding, the defendant relies upon the fact asserted at the trial, that his present dam is not higher than any one which preceeded it; and to the second, that the interruptions to the exercise of the right claimed were not of such a character as would prevent a consummation of the right. Admitting the first assertion to be true, we have then to account for the increased detriment to the plaintiff's land, which could only result from a better construction of the present dam; thereby causing a more complete obstruction of the water. In principle, it must be equal in all respects, whether an inconvenience is suffered from a more perfect refiting of an ancient dam, or from an obstruction wholly new; yet in practice it is easy to perceive that such a rule of decision is exposed to much embarrassment in its application. If the dam remains of the accustomed and proper height, the additional injury produced by rendering it more compact and impervious to

the water, should be permanent, manifest and ⎰ Rutland, Jan.. 1827.
indisputable. And if, as the plaintiff under- ⎱ *Shumway vs. Simons.*
took to prove on trial, the land in question was for many years oc-
cupied as a meadow or pasture, but ever since the building of the
present dam had been so flooded that the grass had ceased to
grow upon it, this is a case of that decisive character for which a
remedy may be had by action.

Upon the other point, the court would now confirm the sug-
gestion of the judge made at the trial, that the modern doctrine of
presumption is founded in analogy to the statute of limitations.—
It is applicable to cases for which the statute has not provided.—
And the evidence in support of a presumptive right, must at least
be sufficient to have established the legal right, provided the stat-
ute had extended to the case in judgment. That the interrup-
tions shown in this case would prevent the acquisition of a title
under the statute can admit of no doubt. They furnish evidence
of a kind of alternate occupation by these parties of the property
in question; and this for many obvious reasons could never satisfy
the statute. The argument for the defendant seems to amount to
this;—that the plaintiff must have known the right was claimed
and would be persisted in, and having omitted for such a length
of time to make resistance or bring an action, he is now conclud-
ed to deny the right, nothwithstanding its exercise may have
been often interrupted or suspended by other persons. If during
the seasons of interruption, the plaintiff in submission to an alleg-
ed right of the defendant, had forborne to enjoy the land, there
might be weight in this argument; but as the fact was otherwise,
the doctrine held at the trial must be supported. Judgment is
therefore entered on the verdict.

*Clark*, for plaintiff.
*Langdon*, for defendant.