## Rose Massucco v. Vermont College Corporation

[ 247 A.2d 63 ]

June Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 1, 1968

*Ryan & Ryan* for the Plaintiff.

*Monti & Eldredge* for the Defendant.

**Keyser, J.** The plaintiff seeks by a bill of complaint to permanently restrain and enjoin the defendant "from blocking or interfering with her access to a spring and reservoir located on defendant's land and from diverting the subterranean water course which formerly supplied her water system." The spring and reservoir referred to are located on defendant's land lying northerly of Ridge Street, westerly of West Street and southerly of First Avenue in the City of Montpelier.

In 1961 the defendant, Vermont College Corporation, began construction of a dormitory building on its land and it is the result of this construction which caused plaintiff to bring this action. She alleges in her bill that the spring and reservoir created by grant were covered up by the errection of the building and that the subterranean water course which fed that system was diverted.

The defendant denied that the spring and reservoir were in any way molested, injured, or disturbed and no diversion of the subterranean water course had resulted from its construction of the building. The defendant also affirmatively answered the bill alleging that the spring and reservoir had been abandoned.

The trial court found, and the decree ruled, that there was an abandonment of the water rights. The court on its findings dismissed plaintiff's bill with costs to the defendant. The plaintiff appealed and challenges numerous findings of the court and the decree.

■ The findings of the chancellor must be sustained if there is any credible evidence fairly and reasonably supporting them, although there may be inconsistencies or even substantial evidence to the contrary. *Anderson* v. *Knapp,* 126 Vt. 129, 134, 225 A.2d 72. The trier of fact is given the sole determination as to the weight of the evidence, the credibility of the witnesses and the persuasive effect of the testimony. Conflicts in the testimony will be resolved against the excepting party. *Ibid.*

■■ The question of whether there has been an abandonment of an easement is one fact for the trial court. *Nelson* v. *Bacon,* 113 Vt. 161, 171, 32 A.2d 140. This being an affirmative defense cast the burden of proof upon the defendant. 12 V.S.A. §1024; *Sargent* v. *Gagne,* 121 Vt. 1, 10, 147 A.2d 892.

The findings of fact contain the following facts.

In 1905 Sarafino Massucco, deceased husband of the plaintiff, acquired title to the so-called Dr. Watson property on Barre Street in the City of Montpelier. The deed included the conveyance of a water system which furnished water to this and seven other residential properties on Charles and Barre Streets. One spring and a reservoir were located on land lying near the corner of Ridge and West Streets. This land was acquired by the Vermont Conference Seminary and Female College, now defendant Vermont College Corporation, in 1868 by deed of Anna Hubbard with spring rights reserved therein. Plaintiff's spring fed into a small reservoir and from there the water was conveyed by an aqueduct across Ridge Street to a second reservoir used for storage. This was located on the southerly side of Charles Street on property owned in 1931 by John and Catherine Guiliani. An aqueduct ran from this storage reservoir to the Massucco residence with connections to the customers of the system on Charles and Barre Streets.

The plaintiff claims title to said water system from September 1948 under the decree of distribution in her husband's estate and by deed of her three children also distributees therein.

Previous to 1948, Sarafino Massucco by quit-claim deed dated May 23, 1931, and recorded in Book 38, Page 149 of the City of Montpelier land records, conveyed to said Guiliani and wife the "well" of water on their land together with all his "right, title and interest

in and to any and all appurtenances thereof and easements pertaining thereto" in, over and upon the land of the grantees.

The site of the spring on defendant's land as shown on Plaintiff's Exhibit 5A is located about 15 feet westerly from West Street and about 30 feet northerly of Ridge Street. The reservoir is shown therein as being located about 37½ feet westerly from West Street and about 10 feet northerly of Ridge Street. Probings by the construction company in this area with an iron rod and scooping off of dirt with a backfiller were made before construction of the building in an effort to locate the spring and reservoir but with negative results. The construction company did not uncover their location in the course of its work. The dormitory building is not constructed within the area where plaintiff claims and the map shows the spring and reservoir are located.

Beginning 5 or 6 years previous to the conveyence by Mr. Massucco to Guiliani and wife in 1931 no repairs were made to the water system to maintain it in operation or serviceable condition. Prior to 1931 the public had deposited debris in the reservoir on the Guiliani premises which rendered it unfit for use. The system had not been operating since sometime in the late twenties and since 1931 no water was used, or could be used, from the system. The reservoir northerly of Ridge Street on defendant's land became wholly filled with debris some 35 to 40 years previously making it also unusable.

Water has been furnished to the Massucco property and the former customers of the Massucco system on Ridge and Charles Streets by the city municipal water system at least from the time the Massucco system became inoperative.

In order to return the system into operation it would be necessary to acquire new rights of way, lay new pipe and redevelop the spring and reservoir in question.

The act of plaintiff's husband "selling off said reservoir * * * to said Guiliani, * * * truncated the said pipe line and said water system was therefore without any storage reservoir and was unusable thereafter, and had been unusable for 5 or 6 years prior to such conveyance."

The court found in Finding 19 that the deed from Massucco to the Guilianis, coupled with the other facts set forth in the findings "indicates a clear intent to abandon the same" and "that said spring and reservoir located respectively west of West Street and north of Ridge Street and what was left of said water line was abandoned by

the plaintiff and are economically worthless." Plaintiff excepted to this finding.

█ The plaintiff argues, and correctly so, that mere non-user does not constitute abandonment. This Court held in *Mason* v. *Horton,* 67 Vt. 266, 271, 31 A. 291 that the mere non-use of an easement created by grant will not destroy or extinguish it no matter how long continued. In that case the court stated the rule thus:

> "In order to extinguish it by nonuse there must be some conduct on the part of the owner of the servient estate adverse to, and in defiance of, the easement, and the nonuse must be the result of it, and must continue for 15 years; or, to produce this effect the nonuse must originate in, or be accompanied by, some unequivocal acts of the owner, inconsistent with the continued existence of the easement, and showing an intention on his part to abandon it; *and the owner of the servient estate must have relied or acted upon such manifest intention to abandon the right so that it would work harm to him if the easement was thereafter asserted."* (Emphasis ours).

See also *Nelson* v. *Bacon, supra,* 113 Vt. at page 172, 32 A.2d 140; *Sabins* v. *McAllister,* 116 Vt. 302, 308, 76 A.2d 106; *Scott* v. *Leonard,* 119 Vt. 86, 99, 119 A.2d 691; *Sargent* v. *Gagne, supra,* 121 Vt. at page 10, 147 A.2d 892. In the *Scott* and *Sargent* cases there were no findings to show the requisite intent to abandon so the question of whether the owner of the servient estate relied or acted upon a manifest intention to abandon was not reached.

In *Sabins* v. *McAllister,* 116 Vt. 302, 76 A.2d 106, the court reaffirms the statement enunciated in *Mason* v. *Horton, supra,* that "The owner of the servient estate must have relied or acted upon such manifest intention to abandon the right so that it would work harm to him if the easement was thereafter asserted." After holding that abandonment of the easement was not established by the findings, the court said, "Moreover, there is no finding that the plaintiffs are or would be harmed by the assertion of the defendants of their right in the driveway."

If there was a manifest intention by the Massucco's to abandon their water rights on defendant's land, here, as in the *Sabins* case, there is no basis in the findings that defendant, the owner of the servient estate, relied or acted upon such intention so that it would

work to harm it if the rights were thereafter asserted. The record does not disclose any evidence on which such findings could possibly be supported.

The plaintiff did assert her right to the spring and reservoir by letter of her attorney to defendant dated May 26, 1961. This called defendant's attention to the existence of the spring and reservoir on its land and expressed her desire that "nothing be done to affect access to those facilities." Shortly before this date defendant's attorney called the attention of the college administrator to the fact that water rights were reserved in the Hubbard deed of 1868. This was in connection with obtaining a loan for the erection of the dormitory.

The administrator testified that subsequent to this he and his assistant "consulted with Mr. Arbo, who was superintendent of the construction of the building, and I asked them to keep a close watch of all work on the project to see that no alleged injury be done to such an alleged system." This was done and also action was taken to locate the spring and reservoir before construction started making use of plaintiff's 1908 map, Plaintiff's Exhibit 5A. The dormitory is not located on the land where the plaintiff alleges the spring and reservoir are situated.

It is obvious on the evidence that the defendant recognized plaintiff's water rights on its property and took steps to find the spring and reservoir and protect them. It was only after suit was instituted that the claim of abandonment first arose.

■ The burden of proof was on the defendant to produce evidence and findings favorable to it on this essential element of abandonment. Lacking a finding that the defendant is or would be harmed by the plaintiff's assertion of her water rights, the determination of the chancellor that there was an abandonment is error. On this issue the finding of abandonment and that portion of the decree based thereon cannot stand.

The burden was upon the plaintiff to prove the necessary elements of her claim—(1) blocking or interfering with access to her spring and reservoir and (2) diverting the subterranean water course.

The court found in Finding 13: "(T)he defendant has caused no damage to either the said spring or the said reservoir in any manner." The plaintiff has saved no exception to this finding and it stands unchallenged.

■ Notwithstanding this, the maps placed in evidence show that the dormitory as constructed does not block or interfere with plaintiff's access to her spring and reservoir as she alleged in her bill. Ernest Massucco testified that the building is over, or extends over, the site of the spring and reservoir. In addition to the maps there is other evidence by defendant's witnesses opposed to this testimony of Massucco. By Finding 11 the court found the site of the spring and reservoir as they were placed and located on Plaintiff's Exhibit 5A. This map of the water system, drawn to scale, was made in 1908 by a firm of civil engineers. This evidence fairly and reasonably tends to sustain the finding. *N. E. Road Machinery Co.* v. *Calkins,* 121 Vt. 118, 120, 149 A.2d 734.

Clearly the plaintiff failed to establish her claim that access to her spring and reservoir were blocked or interfered with by defendant's building.

The remaining question is whether the defendant diverted the subterranean water course which formerly supplied her water system.

The court found by Finding 14 that because of the erection of the building "there was no interruption or diminution of water either available to said spring or to the said reservoir or of any percolating waters through said lot, * * * and the court finds that there is no loss of water either to the spring or to the said reservoir by new construction of said Dewey Hall."

■ The plaintiff excepted to this finding as being "contrary to the weight of the evidence." The weight of the evidence and the credibility of the witnesses and the persuasive effect of the testimony lies solely with the trier of facts. 12 V.S.A. §2385; *Smith* v. *Lentini Ex'r.,* 125 Vt. 526, 528, 220 A.2d 291.

No. 25 of the findings reads in part as follows:

"The erection of the plaintiff's [sic] building and its foundations, which are located on said lot, have not at anytime and do not interfere in any manner with any waters that might otherwise have gone to said spring or said reservoir located respectively west of said West Street and north of said Ridge Street and shown on Plaintiff's exhibit 5A. The Court, therefore, finds that the defendant has not interfered in any manner with the freeflow of water through the said lot as set forth in the Plaintiff's complaint, or in any manner whatsoever."

Plaintiff's exception to this finding is that it is based upon opinion evidence given by persons not qualified as experts in the field of water supply.

█ On trial plaintiff made no objection to the engineers who testified, either as to their qualifications or the testimony they gave pertinent to the finding *supra*. The question of competency not being raised below, it is not available for review in this court. *Powers* v. *State Highway Board,* 123 Vt. 1, 5, 178 A.2d 390.

█ Moreover, there is evidence to support the Findings 14 and 25. The only water found in excavating for the building was on the opposite corner of the lot from the corner where plaintiff's spring and reservoir were located. The supply of water at the spring could not be tested, nor could it be visibly determined. Soil borings, or test holes, were taken to discover both water levels and soil types. Based on the results shown by these tests, the engineers testified that the "construction operation * * * would not affect water" that might have gone to a spring and reservoir as located on Plaintiff's Exhibit 5A. From the test holes taken before and after the construction no perceptible change was noted in the ground water level. Furthermore, the plaintiff produced no evidence which indicates that the underground water flow to her spring was interfered with or diminished.

Plaintiff's exceptions to Findings 14 and 25 are not sustained.

The finding of abandonment of the spring and reservoir on defendant's land and paragraphs 1 and 2 of the decree based thereon is error. Paragraph 3 of the decree dismissing plaintiff's bill of complaint is supported by the remaining findings of fact and must be affirmed. *Miller* v. *Miller,* 124 Vt. 76, 78, 197 A.2d 488. The case will be returned for the entry of a new decree with paragraphs 1 and 2 of the present decree struck therefrom.

*Decree reversed and cause remanded. Let a new decree be entered in accordance with the views expressed in the foregoing opinion.*