**Frances H. Russell and James I. Russell v. Claude Pare and Peter Rodin**

[321 A.2d 77]

No. 47-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed May 8, 1974

Motion for Reargument Denied June 12, 1974

398

*Rexford, Kilmartin & Chimileski,* Newport, for Plaintiffs.

*Raymond Peterson, Esq.,* Newport, and *Lee E. Emerson, Esq.,* Barton, for Defendants.

**Daley, J.** The plaintiffs are the owners of Seymour Lodge located on the northerly side of Route 111 in the Town of Morgan. The defendants are in the process of erecting a building upon a triangular strip of land on the southerly side of Route

111 between the highway and the waters of Lake Seymour. The building is directly across the road and in front of the lodge.

By a bill of complaint brought to the then Orleans County Court of Chancery, the plaintiffs claimed to have acquired a right of user over the land upon which the building is being erected, and that the actions of the defendants constitute an interference with their rights of user. They prayed for the issuance of a temporary and permanent injunction to restrain the defendants from further interference with their claimed rights and for the restitution of the land to the condition it was in prior to the acts of the defendants. The defendants claim title by deed of conveyance.

The disputed parcel is described in the plaintiffs' bill of complaint as follows:

> Bounded southerly by the northerly shore of Seymour Lake, bounded westerly by the public beach evidenced by a line extending from the low water mark of Lake Seymour, northerly to a culvert in the public highway, bounded easterly by the defendants' premises evidenced by a line which follows the course of the plaintiffs' easterly boundary line extended and elongated southerly to the water's edge and bounded northerly by said public highway.

After lengthy hearings before the chancellor, he concluded that, although legal title to the above-described parcel was in the defendants,

> the plaintiffs and their predecessors in title to Seymour Lodge have used the disputed parcel openly, notoriously, continuously, and adversely to the rights of the defendants and their predecessors in title for the purposes of fishing, docking and launching boats, swimming, and picnicking, and have thereby acquired a prescriptive easement over and on the disputed parcel for these purposes.

The chancellor also concluded that the building of the defendants had been erected in such a way as to effectively destroy the prescriptive easement acquired. The judgment order required the removal of that part of the building located on the disputed parcel which prevents the plaintiffs from the exercise of the stated prescriptive rights.

The defendants appeal, contending that certain findings of fact are not supported by the evidence, that the judgment is not supported by the facts found, that the chancellor erred in the exclusion and reception of certain evidence, that the chancellor erred in his conclusions of law, and that the judgment order is so vague, indefinite, and uncertain as to be incapable of compliance.

The term "prescription" is usually applied to acquisition of easements or other non-fee interests. The term "adverse possession" is usually applied to acquisition of fee interests. This distinction is not always clear, but it is settled that the rules of law applicable to the two are in harmony. *Abatiell* v. *Morse*, 115 Vt. 254, 258, 56 A.2d 464 (1947); *D'Orazio* v. *Pashby*, 102 Vt. 480, 485, 150 A. 70 (1930); *Barber* v. *Bailey*, 86 Vt. 219, 223, 84 A. 608 (1912).

The basic requirement for either is that the adverse use or possession must be open, notorious, continuous for 15 years, and hostile. The person against whom the claim is asserted must acquiesce in the use or possession by the claimant. *Laird Properties* v. *Mad River Corp.*, 131 Vt. 268, 277, 305 A.2d 562 (1973); *Higgins* v. *Ringwig*, 128 Vt. 534, 538, 267 A.2d 654 (1970); 12 V.S.A. § 501.

The doctrine derives from two separate but related theories. The first theory is the old doctrine of presumptions. It in pertinent part provides that use, accompanied by claim of right for the 15-year period, creates a presumption that a grant of the right was made. *Mitchell* v. *Walker*, 2 Aik. 266, 269 (Vt. 1827); *Shumway* v. *Simons*, 1 Vt. 53, 57 (1827); *Tracy* v. *Atherton*, 36 Vt. 503, 514–15 (1864). The second theory is analogous to the statute of limitations. We view the applicable statute of limitations as a part of the doctrine. See 12 V.S.A. § 501, referred to in *Higgins* v. *Ringwig, supra,* 128 Vt. at 358. Long and uninterrupted possessions should be supported. *Tracy* v. *Atherton, supra,* 36 Vt. at 514–15. The passage of time should foreclose litigation. *Shumway* v. *Simons, supra,* 1 Vt. at 57.

The plaintiffs must come forward with evidence to show the elements of adverse or prescriptive use. *Higgins* v. *Ringwig, supra,* 128 Vt. at 538. Their claim is not defeated simply because the defendants produce evidence which could support

a contrary inference. It is for the court below, as fact finder, to weigh the evidence. We must affirm the facts found if they are fairly and reasonably supported by credible evidence, *Laird Properties* v. *Mad River Corp.*, *supra*, 131 Vt. at 278, and are not "clearly erroneous", V.R.C.P. 52; *Wells* v. *Village of Orleans*, 132 Vt. 216, 315 A.2d 463, 466 (1974); *Seaway Shopping Center Corp.* v. *Grand Union Stores, Inc.*, 132 Vt. 111, 315 A.2d 483, 486–87 (1974).

The record before us presents the following facts. Seymour Lodge is a building consisting of eleven rooms, eight of which are rented to summer guests, the other three rooms being the home of the owners. The front of the lodge faces Lake Seymour to the south and is separated from the lakeshore by Route 111. The disputed parcel lies directly opposite the lodge between Route 111 and the lakeshore.

From 1921 to 1931, Edna and the late George Hopkins owned the Seymour Lodge. Mrs. Hopkins testified at the hearing before the chancellor that she and her husband began a "fisherman's lodge" business in 1921. She testified that in their business they used the whole of the disputed parcel for beaching up to 25 boats and that the guests of their lodge went picnicking on and cast their lines out to fish from the disputed parcel. This testimony was corroborated by Oliver Charland and George Heslin, long time residents of the Lake Seymour area.

In 1925, Alex Lafoe purchased land on the southerly side of Route 111. Until 1960, he operated a filling station, small store, boat rental business, and several small cabins which he rented during the fishing and tourist season. His business operation was located on land east of the disputed parcel. His living quarters were in the rear of the store.

Edna Hopkins testified, and the chancellor so found, that at one time Mr. Lafoe claimed the disputed parcel was under his deed. He attempted to prevent Mr. and Mrs. Hopkins from using the disputed parcel as they had since 1921 for the benefit of themselves and their guests. They at all times resisted any attempt by Lafoe to prevent them from using the disputed parcel. At one time Mr. Lafoe erected a small fence across the disputed parcel, which was promptly torn down by Mr. Hopkins.

Subsequently, Mr. Lafoe sought legal advice relative to his claim of ownership of the disputed parcel. However, he made no further attempt to prevent the Hopkins or their guests from using the disputed parcel.

In 1931, Mr. and Mrs. Hopkins sold the Seymour Lodge to persons named Shaw, who continued in ownership of the lodge until 1939. Both witnesses Heslin and Charland testified that the Shaws continued the lodge business as it had been run by the Hopkins, maintaining the "fishing lodge", taking in boarders, and most importantly, for purposes of this opinion, continuing the same uses of the disputed parcel as those of the Hopkins.

During the hearing, testimony was given by Kenneth Green, a patron of Alex Lafoe's fishing operation from 1929 to the late 1950's. He testified that the Seymour Lodge boats were always launched on the disputed parcel and that Mr. Lafoe told his guests to keep their boats over on his land and not to park on the other place because that was all the Seymour Lodge place. Mr. Green also testified that the help from Seymour Lodge mowed the lawn on the disputed parcel, and to the existence of a no trespassing sign with the Seymour Lodge name on the disputed parcel.

This fact situation is similar to that in *Montgomery* v. *Branon,* 127 Vt. 83, 238 A.2d 650 (1968), in that the use by the owners of Seymour Lodge can be inferred from the location of the lodge and the purpose for which it was maintained. *Id.* 127 Vt. at 88.

The record, by the testimony of the witnesses, clearly supports the determination of the chancellor that the use of the disputed parcel by the owners of Seymour Lodge was open and notorious. Chief Justice Redfield observed in *Arbuckle* v. *Ward,* 29 Vt. 43, 53 (1856), that:

> [T]he mere use, if so open and notorious as obviously to attract the notice of the owner of the soil, or if expressly shown to have come to his knowledge, will *prima facie* establish the right, and it will be incumbent upon the owner to show in some mode that it was not used under a claim of right . . . , or that he did not understand it, and was not bound to so regard it from the nature and extent of the use.

Open and notorious use, without countervailing evidence of permission, gives rise to a presumption of claim of right. *Higgins* v. *Ringwig, supra,* 128 Vt. at 538–39. It is not necessary for a prescriptive claimant to voice his claim if his use is such as to indicate that a prescriptive claim is being asserted. *Waterman* v. *Moody,* 92 Vt. 218, 238–39, 103 A. 325 (1918); *Barber* v. *Bailey, supra,* 86 Vt. at 223.

In this case the open and notorious use of the disputed parcel by the owners of Seymour Lodge did, in fact, come to the attention of Mr. Lafoe, who claimed ownership of the disputed parcel. This gives rise to the *prima facie* claim of right by both the Hopkins and the Shaws. Moreover, when Mr. Lafoe presented his objections both verbally and physically by building a small fence, there was not "a single lisp of acknowledgment" by Mr. Hopkins of Lafoe's right to exclude Hopkins from using the disputed parcel and Hopkins promptly tore down that fence. See *Smith* v. *Vermont Marble Company,* 99 Vt. 384, 393–94, 133 A. 355 (1926). Here, there is clear and convincing evidence that the owners of the Seymour Lodge did not have permission to use the disputed parcel. Hence, the argument of the defendants that the Shaws did not use the disputed parcel under a claim of right is negated by the unrebutted presumption that the Shaws' use of the parcel, with full knowledge and without the permission of Mr. Lafoe, was under a claim of right.

In the absence of permission, the use of the disputed parcel under a *prima facie* and evidentiarily established claim of right firmly establishes the hostility of that use. *Cf. Barber* v. *Bailey, supra,* at 223–24.

The only element of adverse use that remains to be considered is that the use was continuous for fifteen years. 12 V.S.A. § 501; *Higgins* v. *Ringwig, supra,* 128 Vt. at 538. Defendants argue that the period from 1921 to 1939 cannot serve for the ripening of a prescriptive use as there had been no "tacking" of the ownership and possession of both the Hopkins and the Shaws sufficient to constitute a continuous 15-year period. Their position is that, in order to "tack" the uses for a total 15-year period, the deed between Hopkins and Shaws must specifically refer to the prescriptive right.

■■ The general rule is, as defendants argue, that privity is required for tacking of adverse use periods in establishing prescriptive easements. Deed conveyance is, however, not the only way to establish that privity. The general rule is that in these circumstances privity results at least when the successor assumes the use of the easement directly from his predecessor as a part of his receipt of the dominant estate, irrespective of whether the instruments involved mention the easement. See generally, 2 Am. Law of Property § 8.59 (A. Casner ed. 1950); Restatement of Property § 464 and comment (1944); Ballentine, *Title by Adverse Possession*, 32 Harv. Law Rev. 135, 147–59 (1919); Note, 32 Cal. L. Rev. 438–39 (1944). The evidence here clearly demonstrates that the Shaws assumed use of the easement, the subject of this litigation, directly from their predecessors, the Hopkins. The defendants take nothing by this claim.

■ There is, then, evidence in the record that an open, notorious, adverse use of the disputed parcel by the owners of the Seymour Lodge was established in 1921, that it was continuous to 1939, and that it was acquiesced in by the defendants' predecessor, Alex Lafoe.

We must construe the evidence and findings to support the decree. *Largess* v. *Tatem*, 130 Vt. 271, 280, 291 A.2d 398 (1972); *Edwards* v. *Fugere*, 130 Vt. 157, 159, 287 A.2d 582 (1972). The evidence in this case supports a determination that adverse use of the disputed parcel for fishing, docking and launching boats, and picnicking was established in 1921 and ripened into a perfected prescriptive easement in 1936.

■ When the proponent of a prescriptive acquisition produces facts sufficient to support the claim, the burden shifts to the defendants to show such possession or intrusion as would defeat the prescriptive claim. *Montgomery* v. *Branon, supra*, 127 Vt. at 89; *Barber* v. *Bailey, supra*, 86 Vt. at 223–24. *Plimpton* v. *Converse*, 42 Vt. 712, 718 (1870).

The defendants contend that even though a prescriptive right may have been perfected in the past, subsequent diminution of use, interruptions of use, and hostile claims by the defendants' predecessors have impaired or destroyed that right.

 A perfected easement may be extinguished by non-use in some circumstances. *Massucco v. Vermont College Corp.*, 127 Vt. 254, 258, 247 A.2d 63 (1968). Extinguishment by non-use may result when that non-use is caused by use or conduct on the part of the owner of the servient estate adverse to and in defiance of the easement. That use or conduct must be open, notorious, equivalent to ouster, continuous for 15 years, and incompatible with the use of the dominant estate. *Id.* Extinguishment by non-use may also result from acts of the owner of the dominant estate. Unequivocal acts on his part inconsistent with continuance of the easement and manifesting an intent to abandon will extinguish the easement if the owner of the servient estate relies on those acts so that injustice will result to him if the easement is subsequently enforced. This is sometimes referred to as abandonment. *Id.*

The failure of the chancellor to find any specific acts of usage by Mr. Branon or Mr. and Mrs. Cunningham, owners of the lodge between 1939 and 1949, does not warrant the conclusion of termination of the easement by non-use contended for by the defendants. The testimony of Robert Nelson, whose mother operated Seymour Lodge while it was owned by Mr. Branon, showed a continued use of the disputed parcel for purposes of swimming and pulling up boats that belonged to the lodge. The testimony of Winifred Dutton, an employee of Seymour Lodge while it was owned by Mr. and Mrs. Cunningham, also showed that the disputed parcel was used for launching boats belonging to the lodge, and picnics, and that vacationers came to the lodge for swimming. Furthermore, Mrs. Dutton testified that after the Russells acquired Seymour Lodge, in 1949, the same uses were made of the disputed parcel for five additional years during which she worked at the lodge.

Mrs. Russell's testimony showed, and the chancellor so found, that:

> After Mr. and Mrs. Russell purchased Seymour Lodge, the complexion of Seymour Lake began to change from a simple fishermen's mecca to a more complex recreational area. Motorboats were introduced to the lake; water skiing became more prevalent. The public beach

to the west of Seymour Lodge began to draw people in larger numbers, especially on weekends.

This finding of diminished use during the ownership of the plaintiffs from 1949 onward is insufficient to support the conclusion of abandonment. These acts are not shown to amount to ouster or to have resulted in complete non-use of plaintiffs. Nor is there evidence of any intent to abandon by plaintiffs. The diminished use as found by the chancellor related not to acts by the plaintiffs but to general changes in the complex of the activities in the Seymour Lake area. On the state of the evidence, termination of this easement by extinguishment or abandonment has not occurred. *Massucco v. Vermont College Corp., supra.*

Another claim of the defendants, akin to their "tacking" claim, relates to the lack of mention of this easement in conveyances of the Seymour Lodge property subsequent to 1939. When an easement has been perfected, it is as if it were acquired by grant, *Montgomery v. Branon, supra,* 127 Vt. at 89–90, it will be conveyed by a deed of the dominant estate just as an easement by grant would be. A conveyance impliedly includes all incidents necessary to its enjoyment. *Perrin v. Garfield,* 37 Vt. 304, 312–13 (1854); see also Note 32 Cal. L. Rev., *supra,* at 438–39. Appurtenant easements are included in conveyances by deeds referring to "appurtenances" even if not otherwise mentioned in the deed. *Scott v. Leonard,* 119 Vt. 86, 99, 119 A.2d 691 (1956). Not only is lake access necessary to the enjoyment of a fishing lodge, but the deeds in the plaintiffs' chain included "appurtenances" and this easement, once perfected, was undoubtedly appurtenant. See *Sabins v. McAllister,* 116 Vt. 302, 305, 76 A.2d 106 (1950); Restatement of Property § 453.

Defendants objected to the admission into evidence of a certain brochure, plaintiffs' exhibit 23. We do not reach this issue. There is other sufficient evidence in the transcript to support the findings and conclusion. No prejudice is shown from this brochure and whatever error exists is therefore harmless. *Green Mt. Marble Co. v. State Highway Board,* 130 Vt. 455, 468, 296 A.2d 198 (1972); V.R.C.P. 61.

Defendants also object to the testimony of Kenneth Green, which was discussed earlier in this opinion. Defendants

believed this testimony to be reputation evidence of title, forbidden by *Canfield* v. *Hard,* 58 Vt. 217, 228, 2 A. 136 (1885). This testimony was proper to show openness and notoriety, or a claim of right, or acquiescence by Mr. Lafoe. Moreover, the issue of legal title was determined in favor of defendants, and this evidence was therefore harmless error to defendants even if it were admitted on the issue of legal title.

 Defendants claim that their cross-examination of the plaintiffs was so erroneously restricted that they must have a new trial. As to Mrs. Russell, a review of the transcript shows that most of the excluded questions were repetitious and therefore properly excluded. *State* v. *Berard,* 132 Vt. 138, 315 A.2d 501, 508 (1974). The reasoning behind other limitations on cross-examination of Mrs. Russell is not clear. However, this exclusion can only be grounds for a new trial if the appealing party can show that the result might be changed by the excluded questions. Here Mrs. Russell was testifying as to her use and the use of the defendants and their predecessors in the period from 1949 to 1969. The result could only be changed if the defendants could show that the answers to her questions would be such as would allow a determination of extinguishment or abandonment of the then perfected rights. We are not shown that this could have been the possible outcome of Mrs. Russell's answers. See *State* v. *Berard, supra,* 315 A.2d at 508–09; V.R.C.P. 61. None of the other evidence in the record showed complete non-use, ouster, or intent to abandon for that period. Moreover, extensive cross-examination of Mrs. Russell was in fact allowed.

Defendants claim error as to the exclusion of James I. Russell's testimony relative to Lafoe's acts of dominion over a culvert on the disputed parcel. This issue is not for our consideration as it was not briefed. *Montgomery* v. *Branon,* 129 Vt. 379, 383, 278 A.2d 744 (1971). Defendants claim error in the exclusion, as immaterial, of questions on cross-examination of James Russell relative to his offer to purchase the "Trade Winds" property contiguous to and to the east of the disputed parcel. In their brief, defendants argue that the information sought would show an offer to buy the disputed parcel inconsistent with plaintiffs' claim of right. We think that this offer was not so understood by the trial court. That

court did not, therefore, have a fair opportunity to rule on this issue, and it is not before us on appeal. *Dindo* v. *Denton*, 130 Vt. 98, 109, 287 A.2d 546 (1972).

The argument is made that use of the disputed parcel by the public during times after 1960 defeats plaintiffs' claim of right of user. Use by the public will not prevent prescriptive use unless the public's use is inconsistent with the claimed prescriptive use. See *Plimpton* v. *Converse, supra,* 42 Vt. at 718; *Strong* v. *Wales,* 50 Vt. 361, 381 (1877). Our examination of the record does not show use by the public which is inconsistent with the plaintiffs' claim or which could amount to ouster.

■ The defendants constructed a stone wall on the disputed parcel. They filled behind it and placed a concrete slab on top. Photographs in the record show that this construction resembles a concrete dock at the water's edge. The court found that this wall and slab do not interfere, by themselves, with plaintiffs' prescriptive rights. The court did find, however, that the building being constructed on the slab will effectively destroy the plaintiffs' prescriptive easement. Defendants say that the building only interferes with the picnicking use and does not interfere with fishing, docking or launching boats, or swimming any more than does the wall and slab. They imply that these findings are inconsistent and improper.

Without the building, the wall and slab are apparently no more than an open dock. With the building, they are a foundation for a closed property. We see no inherent inconsistency or impropriety in a finding based on this record that an open dock will not prevent the appellees' use of the easement while a closed building will. The finding must stand, as it is not clearly erroneous. V.R.C.P. 52.

The defendants claim that the judgment order of the chancellor is ambiguous and unclear and that they cannot determine from its terms what they are required to do. That order defines the boundaries of the disputed parcel, states that the plaintiffs have certain prescriptive rights in that parcel, and requires the removal of so much of the building as stands on the disputed parcel, because it interferes with the rights of the plaintiffs. Defendants have shown no am-

biguity in this order, nor any reason why it cannot be complied with.

The evidence and findings here support a determination that adverse use was established by the plaintiffs' predecessors in 1921; that it ripened into a prescriptive easement in 1936; that since that time the easement has been a part of the lodge property; and that it has not been extinguished or abandoned since perfection. This supports the conclusion that the plaintiffs now have prescriptive rights for fishing, docking and launching boats, swimming, and picnicking, and the decree in their favor.

*Judgment affirmed.*