STATE OF VERMONT
CHITTENDEN COUNTY, SS.

CHITTENDEN COUNTY CLERK
FILED IN CLERKS OFFICE

C 2 0 2001

DIANE A. LAVALLEE
CLERK

LAWRENCE I. KRUSE, Trustee )
)
v. )
)
)
)
C. B. PROPERTIES, INC. )

**Chittenden Superior Court**
**Docket No. S 1310-99 CnC**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the court for a hearing on the merits on November 5, 2001 on Plaintiff's complaint to quiet title based on ownership acquired through adverse possession. Plaintiff is represented by David W. M. Conard, Esq. Defendant is represented by Joseph F. Obuchowski, Esq. Based on the evidence admitted and after consideration of the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. The Plaintiff claims ownership by adverse possession of a small triangle of land to which Defendant holds record title. The triangle contains 875.6 square feet and includes 23.88 feet of road frontage on Riverside Avenue in Burlington. It lies between a parcel of Plaintiff to the east and is part of a parcel of Defendant to the west, both of which are apparently commercially valuable.

2. Intervale Avenue and Riverside Avenue join at approximately a 45 degree angle, creating a corner lot in the shape of a triangle known as No. 711 Riverside Avenue. This lot, owned by Defendant, was acquired by Clarence Brown in 1946, and was described as 137 feet along Riverside Avenue and 160 feet along Invervale Avenue, with the third side joining the two ends. Along the eastern edge of this triangle is a smaller triangle which is the subject of this action. It consists of 24.88 feet along Riverside Avenue and runs at a right angle 73.34 feet back from Riverside Avenue a distance of 73.34 feet to the original eastern boundary of No. 711, and 77.13 feet south back to the eastern tip of the No. 711 triangle. It will be referred to herein as "Parcel A." Defendant holds record title to this small triangle as part of his ownership of No. 711.

3. The property to the east of No. 711 is No. 697 Riverside Avenue. It has 33.12 feet of frontage on Riverside Avenue and is a five-sided, lopsided kite-shaped parcel located east of No.

1

711 and running back to Intervale Avenue. It is presently owned by Plaintiff. Directly to the east of No. 697 is No. 693 Riverside Avenue. It has 37.40 feet of road frontage on Riverside Avenue, and is 37.40 feet wide for its full length. Nos. 697 and 693 collectively comprise lands acquired by Mary Brown and her husband Harris by two deeds, one in 1925 and one in 1927, each of which transfered a parcel shaped differently than the present configurations of either No. 697 or No. 693. Harris and Mary Brown owned both these parcels when Clarence Brown acquired No. 711 in 1946. There is no known family connection between Harris and Mary Brown and Clarence Brown.

4. In 1958, Harris and Mary Brown's son Myles lived in the Brown home on the easterly side of their holdings. That year he married the mother of Gary Mathon, who was then 16 or 17 years old, and who moved with his mother to Myles's home on the easterly part of Mary Brown's property. Myles started a cigarette vending machine business in a garage on the property, and Gary began working in the cigarette vending business with his stepfather Myles.

5. In 1960, Mary Brown, whose husband had died, purported to convey to her son Myles, by quitclaim deed, the western portion of her holdings, while she retained for herself the eastern portion. The eastern portion she retained is the present-day No. 693. In purporting to convey the western portion to Myles, she described frontage of 30 feet plus 27 feet along Riverside Avenue, but the remainder of the description is faulty and does not properly describe a circumscribed plot of land. To the extent the description purported to include a parcel with 57 feet of road frontage, the western 23.88 feet was actually not owned by her, but was the road frontage of "Parcel A" (the small triangle) and part of the Clarence Brown parcel that is No. 711.

6. In 1961, Myles constructed a warehouse on the parcel he thought he had acquired from his mother. The warehouse occupied almost all of the eastern 33.12 feet of frontage on Riverside Avenue, and was used by Myles partly for a coin shop and partly for the cigarette vending business. Gary Mathon continued to work for Myles. Among the work tasks he performed was mowing the lawn, which included mowing a lawn area to the west of the warehouse. Part of the lawn was on Parcel A, and part was on land Myles thought he owned, based on the defective deed from his mother. There were no monuments or markers on the ground to distinguish the portion of the lawn that was Parcel A, and actually owned by Clarence Brown, and the portion that had previously been owned by Myles's parents and was then supposedly owned by Myles. At this time, Myles had received a deed that, while defective and therefore ineffective, purported to convey the area labeled herein as Parcel A, on which a portion of the lawn was located, as well as No. 697. The lawn on Parcel A was always neatly mowed by Gary Mathon or someone else working on behalf of the cigarette vending business, and looked as though it was mowed and maintained as part of the curtilage around the warehouse. On the western boundary of Parcel A, there was a clear line of demarcation on the ground between Parcel A, which was lawn that blended with Myles's lawn to the west of the warehouse, and the balance of No. 711, which was undeveloped and consisted of land with trees, brush, and other growth.

7. Gary Mathon worked for the cigarette vending company continuously from when he

2

started in 1958 to the present. He is now part owner of the company, which moved in 1989 from the warehouse property rented from Myles to a new larger location in Williston. From 1961 to 1989, either Gary Mathon or someone else on behalf of the cigarette vending company mowed the lawn to the west of the warehouse. The mowing was done in a neat and tidy manner, in keeping with the neatly maintained appearance of the warehouse.

8. During this period, Clarence Brown occasionally visited his vacant lot (No. 711) with others, including his son Gregory and a family friend John Coffey. He became acquainted with Myles Brown. On one occasion in the mid-70's, a tree from the Clarence Brown lot fell on the warehouse. Myles Brown contacted Clarence Brown, who came to the property, talked with Myles, and caused the fallen tree to be removed. The damage caused by the tree fall was to the building, and neither owner focused on ownership of Parcel A or the lawn located on it.

9. Clarence Brown knew that he owned 137 feet of road frontage on Riverside Avenue. He was a pacer, and liked to pace off the measurements of properties he owned, of which the Burlington property was only one of many. Accurate pacing of 137 feet from the intersection would have led to a spot within 2 feet or so from the western wall of the warehouse, and would have included over 23 feet of mowed lawn that was mowed by Myles's tenant, the cigarette vending company (Myles's own business), on a regular and continuous basis. The mowing of this area was in conflict with Clarence Brown's ownership and control of Parcel A. Clarence Brown had actual knowledge of the mowing by Myles Brown and his company on Parcel A from 1961 to the death of Clarence Brown in 1990.

10. In 1976, Clarence Brown conveyed No. 711 to C.B. Properties, Inc., which is the present owner. Gregory Brown, the son of Clarence Brown, is the present President of C.B. Properties, Inc. Gregory Brown visited the property many times with his father from approximately 1960 to his father's death in 1990. In the 1980's, he saw the mowing of Parcel A on No. 711, and had some concerns about it. Nothing was done.

11. In 1982, Myles Brown wished to expand the warehouse buildings on No. 697 to accommodate the growing cigarette vending business. He submitted an application for a variance from City zoning regulations to allow him to expand the extent of buildings on his lot. Notice of his request was sent to the owners of neighboring properties, including specifically to C.B. Properties, Inc. The plat that was submitted in connection with the application showed ownership by Myles Brown of 94.4 feet of frontage on Riverside Avenue, including all of Parcel A, which continued to be mowed. A public hearing was held on the application on December 2, 1982. The variance request was granted, and an additional building was constructed on the Myles Brown property. A portion of Parcel A was designated for "future parking" in conjunction with the uses for which the variance was sought and granted. The record of the meeting shows no appearance or opposition to the plan by Clarence Brown. At this time, Myles Brown had been mowing the lawn on Parcel A in conjunction with maintaining the warehouse grounds for approximately 21 years.

3

12. The lawn area that encompassed Parcel A continued to be mowed by the cigarette vending company. Periodically Clarence Brown sent a worker to clear brush and clean up litter on the vacant lot No.711, which attracted garbage and activity that the neighbors and police occasionally found to be undesirable. When this happened, the work was done in the wooded and brush area, and no activity on the ground indicated a claim of right by Clarence Brown over Parcel A. The only activity undertaken on Parcel A was the lawn mowing done by or on behalf of Myles Brown.

13. After the cigarette vending company moved to Williston in 1989, conveyances from Mary Brown to Myles Brown in 1990 purported to correct the faulty conveyance previously recorded in 1960. Mary Brown conveyed to her son Myles, in 1990, No. 693 (the easterly parcel on which the house is located), and No. 697, the warehouse parcel, both by warranty deed. The property descriptions were based on a survey prepared in 1990, which itself noted the need for corrective deeds. The deed to the warehouse also included, by quitclaim only, the area consisting of Parcel A which included part of the lawn to the west of the warehouse.

14. In 1999, the respective owners of No. 711 and No. 697 were unable to reconcile their different positions on the ownership of Parcel A. This lawsuit ensued.

**Conclusions of Law**

1. It is the Plaintiff's burden to show by a preponderance of the evidence that Plaintiff and/or his predecessors in interest have exercised ownership over Parcel A in an open, notorious, hostile and continuous manner for a period of no less than 15 years. The elements necessary to establish adverse possession are an adverse use or possession which is open, notorious, hostile and continuous for a period of fifteen years, and acquiescence in the use or possession by the person against whom the claim is asserted. Community Feed Store, Inc. v. Northeastern Culvert Corp., 151 Vt. 152, 155 (1989). The burden is on the Plaintiff to establish all elements of adverse possession. Jarvis v. Gillespie, 155 Vt. 633, 638 (1991). To oust an owner by adverse possession, a user "must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest." Barrell v. Renehan, 114 Vt. 23, 29 (1944). At the close of evidence, both parties moved for judgment as a matter of law. The court concludes that because of significant disputes of fact, and more importantly significant disputes of the reasonable inferences to be drawn from different facts presented by both parties, neither party is entitled to judgment as a matter of law, and the court as trier of fact is obliged to make findings of fact after weighing the evidence, which the court has done. The conclusions of law set forth herein are based on the facts so found. The motions of both parties for judgment as a matter of law are denied.

2. Plaintiff claims that his predecessor in title, Myles Brown, "unfurled his flag" on Parcel A by virtue of the 1960 deed from Mary to Myles. In this deed, Mary purported to convey to Myles lands which included Parcel A, to which she did not have title. There is no reason for Clarence to have suspected in 1960 that his neighbor (Mary Brown) had purported to convey a

4

portion of lands owned by him. The court will not place on an owner the burden of checking the land records every 15 years to see if anyone has purported to convey the owner's lands. Adverse possession requires "open" and "notorious" use, meaning that the uses are visible on the ground. "Acts of possession are deemed sufficiently open and notorious if they are conducted in a manner which would put a person of ordinary prudence on notice of the claim." Jarvis v. Gillespie, 155 Vt. 633, 641 (1991). There is never any need for the adverse claimant to actually voice the claim, as the claim depends on the claimant's acts. See Russell v. Pare, 132 Vt. 397, 404 (1974). Thus adverse possession requires visible activity on the ground, even though it does not require a voiced claim. The recording of a defective deed in the land records, by itself, without action on the ground, is not sufficient. No period of adverse possession began to run with the recording of the defective 1960 deed. The effect of this deed was to instill in Myles a belief that he owned Parcel A, but it had no effect of unfurling on the ground any flag or notice to Clarence Brown that Myles claimed a portion of his lands.

3. Such notice and 'planting of the flag' occurred in 1961, when Myles constructed a warehouse that was set back only 2 feet or so from Clarence's property line and proceeded to mow regularly a lawn that encroached 23.88 feet along Riverside Avenue onto Clarence's property, treating a parcel (Parcel A) with approximately 24 feet of road frontage as if it were his own and part of the parcel on which his warehouse was located. The findings of fact show that Clarence had actual notice of this regular and routine mowing on his land, done in conjunction with maintenance of the warehouse property, and did nothing to stop it or grant permission for it to continue.

4. Defendant asks the court to infer from the acquaintanceship and meetings between Clarence and Myles, and Clarence's knowledge of the specific boundaries of the properties that he owned, that Clarence was knowledgeable about real estate matters and granted Myles permission to use Parcel A for mowing, thereby undercutting any running of any period of adverse use. Even assuming that the burden of proof is on the Plaintiff to show lack of permission rather than on the Defendant to show permission as an affirmative defense, the facts proved by Plaintiff show that Clarence never gave Myles permission to use Parcel A. Clarence Brown visited his property several times with others (his son Gregory and John Coffey), but did nothing in their presence to grant permission to Myles Brown for use of Parcel A, which Myles Brown was obviously exercising over a period of years in a highly public manner. The fact that Clarence was a "pacer" supports Plaintiff's evidence of lack of permission, because Clarence had the habit and ability of checking the boundaries of his parcels of property; by pacing off 137 feet, he easily saw that Myles was using Parcel A as part of his own property, yet he did nothing to either stop it or give permission. "It is for the court. . ., as fact finder, to weigh the evidence." Russell v. Pare, 132 Vt. at 401-402. The court concludes that Clarence Brown did not give Myles Brown permission to use Parcel A for any time between 1961 and 1976 (15 years later). Clarence Brown conveyed No. 711 to C. B. Properties, Inc. in 1976. That would have been a logical time to address any outstanding concerns about boundaries or any claim or use Myles was making of Parcel A, or to attempt to grant permission for continued use, but Clarence Brown did not do so. In the deed to C. B. Properties, Inc., he described the property as 137 feet along

5

Riverside Avenue, which was inconsistent with the open, notorious, hostile, and continuous use of the frontage that Myles had been engaged in for the previous 15 years.

5. Myles caused Parcel A to be maintained as curtilage of the warehouse for a period of 21 years, from 1961 to 1982 through mowing and maintenance that showed exercise of dominion. In doing so, he relied on a 1960 deed that purported to convey to him 24 feet of road frontage on Riverside Avenue that is consistent with the current configuration of Parcel A. His lawn maintenance occurred in that area only and in no other part of Clarence Brown's lot No. 711. Such actions on the part of Myles were open, notorious, and hostile with respect to Clarence's interests. They continued until 1982, at which time he publicly proclaimed his ownership of Parcel A in a clear and unequivocal manner by submitting an application to the City in which he claimed ownership of Parcel A, including full unrestricted use of it. He showed ownership of Parcel A on a plat plan submitted in connection with a publicly noticed application to increase the density of commercial use on his property, and notice of his request was specifically given to C.B. Properties, Inc. as owner of the abutting parcel. As of that time, C. B. Properties, Inc., through its principal Clarence Brown, and Clarence Brown himself, had had actual notice that Myles had been mowing Parcel A for 21 years. Myles was not just planning to continue mowing the lawn; he was planning to use the full benefits of ownership of the fee for expanded commercial use of No. 697. The court concludes that when he filed the application, Myles had already acquired ownership of Parcel A through adverse possession in 1976, the date on which the 15 year period of adverse possession ripened into ownership. 12 V.S.A. §501. Nothing had occurred during the 15 year period to interrupt the running of the open, hostile, notorious, and adverse ownership use.

6. Myles obtained the variance which has remained with the property, and he continued mowing the lawn. In 1990, Myles obtained a new deed by which any ownership interest of Mary Brown in Parcel A was conveyed to him as a matter of record title. This deed actually had no effect, since there is no proof that Mary Brown herself had ever established ownership of Parcel A, either before she first purported to convey it in 1960, or by 1990 when she attempted to convey it again by quitclaim deed. Such a conveyance was unnecessary in any event, since Myles had already established his own ownership interest in Parcel A through 15 years of open, notorious, hostile and continuous use.

7. While the 1960 quitclaim deed that apparently attempted to convey Parcel A did not successfully do so, it gave Myles color of title in that it defined an area with 24 feet of frontage along Riverside Avenue at the eastern end of No. 711, and it was this exact parcel that Myles used from 1961 forward. While lawn mowing only occurs for certain months of the year in Vermont, continuity of use is merely such use as an average owner would make of the property, taking into account its nature and condition. Darling v. Ennis, 138 Vt. 311, 314 (1980). Seasonal lawn mowing of an area surrounding a commercial property, which appears as regular and appropriate maintenance of the business property, is sufficient to establish continuous use.

8. Defendant argues that lawn mowing alone is not a sufficient use to establish adverse

6

possession, citing cases from other jurisdictions. Whether or not lawn mowing is sufficient depends on the circumstances of the property and the related facts. Id. In this case, the maintenance of a lawn on Parcel A was not in any way consistent with the use that Clarence Brown was making of his own lot No. 711 from 1961 to 1976 (an unimproved, undeveloped lot–a classic "vacant lot"–on which vegetation was allowed to grow). Myles's exercise of dominion over Parcel A was complete, in that he treated it fully as if he owned it, and not just as though he were mowing a piece that belonged to someone else, i.e., in a manner that was consistent with the other owner's ownership of the underlying fee. The use meets the continuity requirement and was part of an overall pattern of maintenance by Myles Brown of his warehouse and surrounding area in a neat and tidy and manner as part of a developed commercial property. The court concludes that the lawn mowing in the context of the circumstances under which it occurred is sufficient to establish open, notorious, hostile, and continuous use of the fee during the 15 year period of adverse possession. Thus Plaintiff has proved ownership of the entire fee by adverse possession, and not just a prescriptive right to use Parcel A for lawn purposes.


## ORDER


WHEREFORE,

For the foregoing reasons, Plaintiff has sustained his burden of proving his claim of ownership by adverse possession which matured in 1976, and judgment will be entered for Plaintiff.

Plaintiff's attorney shall submit a form of judgment order, and Defendant's attorney shall have five days to file objections.

**So Ordered.**

Date at Burlington, Vermont this 20th day of December, 2001.


Hon. Mary Miles Teachout
Superior Court Judge

7